**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, to-wit:

I, Terry Hedrick, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. This Affidavit is made in support of separate applications for the issuance of a seizure warrant for the following: All principal, deposits, interest, dividends and other amounts credited to accounts listed in Paragraph 6, below, held in the name of NEDELTCHO VLADIMIROV (hereinafter "VLADIMIROV"), which are collectively referred to hereinafter as the "SUBJECT FUNDS."

2. Based on the facts set forth herein, probable cause exists that violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1349 (conspiracy), 1956-1957 (money laundering), and 2314 (transfer of stolen goods), have been committed and that the SUBJECT FUNDS constitute or are derived from proceeds traceable to those violations.

3. I am a Special Agent with the United States Secret Service (hereinafter, the "USSS"), Charleston, West Virginia Resident Office, and have been so employed since December of 2004. I am authorized, pursuant to 18 U.S.C. § 3056(b), to detect and arrest any person who violates any of the laws of the United States

relating to electronic fund transfer frauds, access device frauds, false identification documents or devices, and any fraud or other criminal or unlawful activity in or against any federally insured financial institution. Additionally, I am authorized, pursuant to 18 U.S.C. § 3056(c), to execute warrants issued under the laws of the United States.

4. Since becoming a Secret Service Special Agent, I have personally investigated and/or assisted in investigations relating to violations of the laws of the United States relating to electronic fund transfer frauds, specifically 18 U.S.C. §§ 1028A (aggravated identity theft), 1341 (mail fraud), 1343 (wire fraud), and 1956-1957 (money laundering). I received 30 weeks of training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and Secret Service's Rowley Training Center in Beltsville, Maryland before my assignment as a Secret Service Special Agent in the Charleston, West Virginia Resident Office. During this training I learned how to investigate violations of the laws of the United States relating to electronic fund transfer frauds, specifically 18 U.S.C. §§ 1028A, 1341, 1343, and 1956-1957.

5. The information contained herein is based on my knowledge, training, and experience, my direct involvement in this investigation, and upon information relayed to me by other law enforcement agents, and other witnesses. Because this Affidavit is

2

being submitted for the limited purpose of seeking a seizure warrant for the SUBJECT FUNDS within the TARGET ACCOUNTS, I have not set forth each and every fact learned during the course of this investigation, but simply those facts which I believe are necessary to establish probable cause. Summaries of the financial analysis that was created during the course of the investigation are also included within the document.

### DESCRIPTION OF PROPERTY TO BE SEIZED

6. The basis for the seizure of the SUBJECT FUNDS is that they constitute or are derived from proceeds traceable to the violations of 18 U.S.C. §§ 1341, 1343, 1956 and 1957, described herein and therefore are subject to civil judicial forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), civil seizure pursuant to 18 U.S.C. § 981(b)(1), criminal forfeiture pursuant to 18 U.S.C. § 982(a)(2) and criminal seizure pursuant to 18 U.S.C. § 982(b)(1), 21 U.S.C. § 853(f) and Fed. R. Crim. P. 41. Each item requested for seizure is particularly described in Attachment A as to each warrant. The SUBJECT FUNDS sought for seizure are believed to be located in the bank accounts listed below (hereinafter, the bank accounts are collectively referred to as the "TARGET ACCOUNTS"):

   a. All funds on deposit in account #XXX8889, held by Nedeltcho Vladimirov at City National Bank;

   b. All funds on deposit in account #XXX4623, held by Nedeltcho Vladimirov at City National Bank; and

     c. All funds on deposit in account #XXX8197, held by Nedeltcho Vladimirov at JP Morgan Chase Bank.

7.    This warrant authorizes the seizure of the SUBJECT FUNDS within the TARGET ACCOUNTS. Thus, this warrant authorizes the seizure of the SUBJECT FUNDS even if the funds have been moved from the TARGET ACCOUNTS into escrow or suspense accounts held by the financial institutions.

PROBABLE CAUSE

8.    Since approximately December 2018, the United States Secret Service, the West Virginia State Police, Bureau of Criminal Investigation, the Putnam County Sheriff's Office, and the South Charleston Police Department (SCPD), together with Organized Retail Crimes (ORC) investigators from Kroger, CVS Pharmacy (CVS), and Target Corporation (Target), have been investigating VLADIMIROV for violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1349 (conspiracy), 1956-1957 (money laundering), and 2314 (transfer of stolen goods). These violations arise from VLADIMIROV's operation of a fraudulent scheme involving the interstate shipment of stolen goods.

9.    As part of the scheme, VLADIMIROV has enlisted a crew of "boosters" who steal the merchandise from local retail stores and sell the stolen merchandise to VLADMIROV, who then sells the stolen merchandise online marketplaces such as eBay at a higher price. Boosters usually have very specific items in mind when perpetrating

their schemes; usually driven at the direction of a fencing operation. Heavily targeted items tend to be those that are in high demand and of a high value relative to their size, ease of theft and profitability on the secondary market. Many of the known boosters are drug users addicted to controlled substances, who use the money received from VLADMIROV to support their drug habits.

BACKGROUND: ORIGIN OF INVESTIGATION

10.     In November 2018, a CVS store in Hurricane, West Virginia, was impacted by a booster targeting Prevagen memory pills, which is an item commonly stolen and re-sold in fencing operations. Based on this information, a notice advising law enforcement and retail partners in the local area to "be on the lookout" (BOLO) for the subject was issued. Target Market Investigator Nicholas Niehaus (MI Niehaus) later contacted CVS Pharmacy ORC Manager Jose Varela and stated the same subject booster from the BOLO had also impacted Target stores in the Southern District of West Virginia area for several months.

11.     From on or about September 10, 2018 to on or about December 29, 2018, known boosters Jonathan Marcus (hereinafter "Marcus") and Steven Anderson (hereinafter "Anderson") impacted South Charleston and Barboursville Target stores on multiple occasions for an estimated loss to Target of $1,500. Target Asset Protection ultimately identified the booster through an

apprehension of Steven Anderson. Anderson was known to travel with Jonathan Marcus, who had also been identified through an apprehension.

12. During the booster interview, Marcus indicated to MI Niehaus that the two men would take the stolen merchandise to a local fencer known only as "Ned," who was later identified as VLADIMIROV. Based on information developed in the interview with Marcus and by investigators subsequent to the interview, it is believed that VLADIMIROV has 15-20 drug users "boosting" for him. VLADIMIROV communicates with boosters by phone or electronic messaging service to provide lists of targeted items to the boosters. Following a theft, VLADIMIROV typically meets the booster at the Speedway convenience store and gas station located at 5296 Big Tyler Road, Charleston, West Virginia, which is 1.5 miles from the VLADMIROV's residence. VLADIMIROV pays boosters anywhere from 10%-40% of the retail value of the stolen item.

13. In January 2019, MI Niehaus and ORC Manager Varela met with detectives with the SCPD. MI Niehaus and ORC Manager Varela provided detectives with the SCPD with the factual background of their investigation to that point, and the SCPD began their own investigation into prior retail theft arrests in their jurisdiction. The SCPD determined that numerous arrest interviews

6

were consistent and implicated VLADIMIROV as the suspected fencing operator in the South Charleston area.

### BACKGROUND: BOOSTER APPREHENSIONS

14. On December 29, 2018, Marcus was apprehended at the South Charleston Target store for theft of two Nest Cameras valued at $338.00. During the post-apprehension interview, Marcus indicated he was stealing the item to sell to VLADIMIROV, who buys stolen product from multiple subjects to resell online.

15. On September 11, 2019, Stephanie Miller (hereinafter "Miller") was apprehended at South Charleston, West Virginia, Target store for theft of a purse. During the interview, Miller indicated she steals items from area retail stores to sell to VLADIMIROV. Miller stated multiple subjects, herself included are sent lists from VLADIMIROV. Miller steals and sells the items to VLADIMIROV to support their drug habits.

### BACKGROUND: SURVEILLANCE

16. Based on information received from retail investigators conducting interviews on theft subjects from Target located at 30 RHL Blvd South Charleston, West Virginia, investigators conducted surveillance on VLADIMIROV on three separate occasions: February 19-21, 2019, May 21-24, 2019, and October 22-24, 2019. Investigators observed VLADIMIROV shipping multiple packages a day at the post office located at the intersection of Doc Bailey and

Big Tyler Rd in Cross Lanes, West Virginia, as well as the FedEx location in Cross Lanes, West Virginia.

17. VLADIMIROV was observed on three occasions by Target, CVS, and SCPD investigators meeting subjects to purchase items in his Black BMW bearing West Virginia License Plate NNJ878. On almost every occasion, VLADIMIROV would travel to the U.S. Post Office located at 5306 Big Tyler Road, Charleston, West Virginia, in the early to mid-afternoon time. VLADIMIROV was seen meeting with known boosters and conducting transactions in public parking lots in Cross Lanes and Teas Valley, West Virginia. Detectives and Retail investigators have observed VLADIMIROV conduct multiple meetings with subjects known for theft activity in the Charleston, West Virginia area. VLADIMIROV conducts these transactions from inside his black 2004 BMW.

18. On October 23, 2019, surveillance was conducted of VLADIMIROV at the U.S. Post Office located at 5306 Big Tyler Road, Charleston, West Virginia. At 2:39 p.m., VLADIMIROV arrived at the post office in his black 2004 BMW bearing West Virginia license plate number NNJ878. VLADIMIROV entered the Post Office with several packages. At 2:41 p.m., VLADIMIROV exited the Post Office, returned to his vehicle, and left the property. Mobile surveillance was established at that time. At 2:57 p.m., VLADIMIROV arrived at the McDonald's restaurant located at 4175 WV-34,

Hurricane, West Virginia. At 2:59 p.m., VLADIMIROV remained in the black 2004 BMW, and a white female with a yellow sweatshirt and black backpack was observed on foot walking from behind the McDonald's approached and then entered the passenger side of the vehicle.

BACKGROUND: EBAY SALES

19.   After validating information received from theft suspects and confidential informants provided by the SCPD and Putnam County Sheriff's Office, investigators contacted the eBay Investigations Unit in an attempt to identify the eBay account being used by VLADIMIROV. Investigators provided eBay with known identifiers of VLADIMIROV and were able to identify an active eBay account under his control: nedined. Based on these findings, investigators requested all transaction/sales data for the account from October 30, 2017 to October 29, 2019.

20.   Review of the items being sold by VLADIMIROV on eBay include a multitude of categories: vitamins, over-the-counter medications, personal care items, electronics, pet-related items, tools, kitchen products, toys, RING doorbell systems, and home care items, among others.

21.   From October 30, 2017 to October 29, 2019, 3,676 items were sold on eBay by VLADIMIROV to buyers throughout both the

United States and internationally. $369,818.62 in merchandise was sold by VLADIMIROV during this timeframe.

22. Most recently, an updated request for information was completed for eBay listing data from January 22, 2019 to January 22, 2020. In that time, VLADIMIROV listed and sold 1,761 items. During that time frame, VLADIMIROV's eBay sales totaled $200,897.23.

23. Investigators have analyzed VLADIMIROV'S eBay account and were able to correlate reports of stolen items with items listed on VLADIMIROV's eBay account within days of theft offenses. Utilizing shortage inventory counts, items missing from Target, CVS, and Kroger stores were identified as being listed for sale or already sold on VLADIMIROV's account.

24. Investigators have continued to monitor known theft reports and can correlate theft incidents by subjects known to sell to VLADIMIROV with exact items being listed on VLADIMIROV's eBay account.

25. As of January 23, 2020, VLADIMIROV has over 3,404 items listed for sale on his eBay account.

## BACKGROUND: CONTROLLED SALES

26. On January 23, 2020, Confidential Informant 18-8400-009 (CI), also known as "John," made a controlled phone call to VLADIMIROV. The CI told VLADMIROV that he had two Phillips

Norelco electric razors from Target, and a meeting was set up at the Speedway parking lot at 5296 Big Tyler Rd, Charleston, West Virginia. TFO K.A. Davis with the Violent Crime and Drug Task Force West drove the CI to the meeting location. VLADIMIROV arrived on scene in his black 2004 BMW, and the CI got into the passenger side of the vehicle with him. VLADIMIROV looked at the items and paid the CI $40. The CI then exited the vehicle, reentered the undercover vehicle with TFO Davis. The CI delivered the U.S. currency to TFO Davis and was debriefed.

27. On January 28, 2020, TFO Davis, acting in an undercover capacity, made a controlled phone call to VLADIMIROV. TFO Davis claimed to be friends with "John" and told VLADIMIROV that he had a RING doorbell. VLADIMIROV agreed to meet TFO Davis at the Speedway parking lot at 5296 Big Tyler Rd, Charleston, West Virginia. VLADIMIROV arrived on scene in his black 2004 BMW, and TFO Davis entered the vehicle with him. TFO Davis produced the stolen Ring door bell system and stated, "I don't know how much I get can get for this." VLADIMIROV then used his mobile electronic device to look up the item on eBay and told TFO Davis he could pay him $35. TFO Davis agreed. TFO Davis then told VLADIMIROV that he wanted to make more money and asked what items VLADIMIROV wanted. VLADIMIROV stated that the more expensive the item the more TFO Davis would get paid. VLADIMIROV

11

indicated that he was looking for Apple products like IPad Pro's.

28. On January 29, 2020, TFO Davis, acting in an undercover capacity, made a controlled phone call to VLADIMIROV. TFO Davis told VLADIMIROV that he had some more items to sell. VLADIMIROV agreed to meet TFO Davis at the Speedway parking lot at 5296 Big Tyler Rd, Charleston, West Virginia. VLADIMIROV arrived on scene in his black 2004 BMW, and TFO Davis entered the vehicle with him. TFO Davis produced the stolen tooth brushes and stated "I got these from CVS and the tag on the shelf said they were $150.00." VLADIMIROV then became very suspicious and asked to see TFO Davis's phone. VLADIMIROV asked what kind of phone it was, and TFO Davis responded that he did not know because it was a phone his mom gave him and it is on her plan. VLADIMIROV then asked to see the phone. TFO Davis handed VLADIMIROV the phone. VLADIMIROV then inspected it by examining the call history and text messages as well as cycling through the applications. VLADIMIROV then closed all of the applications running on the phone, which cancelled the covert recording application that was recording the controlled sale. VLADIMIROV then told TFO Davis that he did not know if he wanted the electric toothbrushes because he sells all the merchandise on eBay, and other eBay listings had the item listed at $35.00.

After some deliberation, VLADIMIROV decided that he could give TFO Davis $30 for the electric tooth brushes. TFO Davis then stated that he would call VLADIMIROV again tomorrow, and VLADIMIROV agreed that would be fine. No audio or video of this controlled sale was obtained due to technical difficulties.

BACKGROUND: FINANCIAL INVESTIGATION

29.  VLADIMIROV's bank accounts at City National Bank for the period December 2017 to November 2019 were analyzed, and the following information was derived:

   (a) Account #XXX8889 VLADIMIROV deposited numerous Postal money orders, PayPal transfers, and raise.com transfers (Raise.com is an e-commerce platform owned and operated by Raise that enables third-party sellers to sell new or used Gift Cards on a fixed-price online marketplace alongside Raise.com's regular offerings), and currency; VLADIMIROV withdraws a lot of money in currency out of this account, as evidenced by him taking out over $76,000 from ATM withdrawals. Investigators believe this is some of the currency he used to pay for stolen goods from the boosters.

   (b) A majority of the deposits into this account are from PayPal. PayPal is the avenue that processes payments when merchandise is bought and sold on EBay. These PayPal deposits totaled over $263,000.00.

   (c) VLADIMIROV transferred over $250,000 from this City National Bank account to his savings account at City National Bank (Account #XXX4623).

   (d) Total Deposits to VLADIMIROV'S #XXX8889 account at City National Bank totaled over $420,000.00.

   (e) Over $272,000 was transferred to VLADIMIROV's Savings account at City National Bank ($155,000 was later transferred back to VLADIMIROV'S #XXX8889 account at City National Bank, and he then wrote a check to transfer

$150,000 to his account at JP Morgan Chase Bank).

(f) On or about July 23, 2019, VLADIMIROV transferred over $150,000 from his JP Morgan Chase bank account to a Bank in Bulgaria. These funds can be traced back to VLADIMIROV's accounts (#XXX78889 and #XXX74623) at City National bank, where all of VLADIMIROV's illegal income which is traceable to the proceeds of the mail fraud, wire fraud and money laundering schemes, were deposited.

## VLADIMIROV USED THE TARGET ACCOUNTS TO HOLD AND LAUNDER HIS UNLAWFUL PROCEEDS

(a) Account #XXX8889 is held at City National Bank—the balance of this account is $9,971.87 as of February 5, 2020. As stated above, this account is filled with transfers from PayPal and Raise.com. As stated above, investigators believe that the funds in the PayPal account are generated illegal proceeds generated from VLADIMIROV's wire and mail fraud activities. As stated earlier, bank records show at least $263,000 of funds from PayPal have been transferred into this account, and VLADIMIROV has made a significant amount of cash (over $76,000) from this account to promote the fraudulent activity. While these figures may or may not account for all of the fraudulent proceeds that were deposited or transferred into this account, these transfers show there is probable cause that the contents of this account still contains fraudulent proceeds and that VLADIMIROV used this account to launder funds in violation of 18 U.S.C. § 1956-1957 and promote his wire and mail fraud activities in violation of 18 U.S.C. §§ 1341 and 1343. While these figures may or may not account for all of the fraudulent proceeds that were deposited or transferred into this account, these transfers show there is probable cause that the contents of this account still contains fraudulent proceeds and that VLADIMIROV used this account to launder funds in violation of 18 U.S.C. § 1956 and promote his wire and mail fraud activities in violation of 18 U.S.C. §§ 1341 and 1343.

(b) Account #XXX4623, held by VLADIMIROV at City National Bank. The balance of this account is $57,500. As stated above, VLADIMIROV transferred over $250,000 from his City National Bank account #XXX8889, which contains illegal proceeds generated from VLADIMIROV's wire and

   mail fraud activities, to his savings account #XXX4623 at City National Bank (Account #XXX4623). While these figures may or may not account for all of the fraudulent proceeds that were deposited or transferred into this account, these transfers show there is probable cause that the contents of this account still contains fraudulent proceeds and that VLADIMIROV used this account to launder funds in violation of 18 U.S.C. § 1956-1957 and promote his wire and mail fraud activities in violation of 18 U.S.C. §§ 1341 and 1343.

 (c) Account #XXX8197, held by VLADIMIROV at JP Morgan Chase Bank. The balance of this account is unknown at this time. As stated above, over $272,000 was transferred to VLADIMIROV's savings account #XXX4623 at City National Bank. $155,000 was later transferred back to VLADIMIROV'S #XXX8889 account at City National Bank, and he then wrote a check to transfer $150,000 to his account #XXX8197 at JP Morgan Chase Bank. On or about July 23, 2019, VLADIMIROV transferred over $150,000 from his JP Morgan Chase bank account #XXX8197 to a Bank in Bulgaria. These funds can be traced back to VLADIMIROV's accounts at City National bank (#XXX78889 and #XXX74623), which contain illegal proceeds generated from VLADIMIROV's wire and mail fraud activities. While these figures may or may not account for all of the fraudulent proceeds that were deposited or transferred into this account, these transfers show there is probable cause that the contents of this account still contains fraudulent proceeds and that VLADIMIROV used this account to launder funds in violation of 18 U.S.C. § 1956-1957 and promote his wire and mail fraud activities in violation of 18 U.S.C. §§ 1341 and 1343.

### SUMMARY OF PROBABLE CAUSE FOR SEIZURE WARRANT

30. Based on the information obtained from witnesses, bank records, and additional sources cited above I have probable cause to believe that since at least late 2017, VLADIMIROV has been involved in a mail fraud and wire fraud scheme. Moreover, I have probable cause to believe that VLADIMIROV laundered the illicit

15

proceeds received from this fraud scheme by using the TARGET ACCOUNTS, in violation of 18 U.S.C. §§ 1341, 1343 (mail/wire fraud); 1956 (laundering of monetary instruments) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity).

31. Further, based upon my experience, training and knowledge set forth above, and based upon the facts set forth above, in addition to speaking with other investigators, your affiant has probable cause to believe that the SUBJECT FUNDS are the proceeds of specified unlawful activity, i.e., the aforementioned mail and wire fraud activities in violation 18 U.S.C. §§ 1341 and 1343.

32. The TARGET ACCOUNTS and SUBJECT FUNDS are generated from from mail fraud and wire fraud proceeds, are being used with the intent to promote the carrying on of specified unlawful activity, as well as to knowingly engage, or attempt to engage in a monetary transaction with proceeds of the specified unlawful activities in an amount greater than $10,000, by, through, or to a financial institution. Therefore, I respectfully submit that there is probable cause to believe that all of the funds on deposit within the TARGET ACCOUNTS— the SUBJECT FUNDS—constitute property involved in a transaction or attempted transaction in violating 18 U.S.C. §§ 1956-1957, or any property traceable to such property,

16

and that said funds are subject to forfeiture under U.S.C. § 981 and/or 18 U.S.C § 982.

33.     The United States requests that the Court issue a seizure warrant as authorized under 18 U.S.C. § 981(b) as well as 21 U.S.C. § 853 (e)-(f) by 18 U.S.C. § 982(b) because there is probable cause to believe that the Subject Property to be seized would, in the event of conviction, be subject to forfeiture, and an order under 21 U.S.C. § 853(e) and/or 18 U.S.C. § 983(j) may not be sufficient to assure the availability of the property for forfeiture as both the SUBJECT FUNDS within the TARGET ACCOUNTS are easily moveable and transferrable property. The earlier paragraphs in the affidavit incorporated herein set forth the reasons why an order under 21 U.S.C. § 853(e) and/or 18 U.S.C. § 983(j) may be inadequate.

34.     Furthermore, the United States requests that the Court in the warrant define the contents of the account as all principal, deposits, interest, dividends, and other amounts credited to the account on and after execution of the warrant up to final liquidation of the account. The United States further requests that the Court in the warrant authorize the United States Secret Service to effect the seizure of the contents of the account by the United States Secret Service, in its discretion, directing the

financial institution at which the account is established to do any of the following without further order of the Court:

    a. To freeze the contents of the account in place and to refuse the withdrawal of any amount from the account by anyone other than the Secret Service, and while any contents of the account are frozen in place to accrue any deposits, interest, dividends, and any other amount credited to the account until the Secret Service directs that the contents of the account be finally liquidated and no contents remain; and

    b. To liquidate some or all of the contents of the account at one or more times and upon any liquidation of any contents to turn over the liquidated amount to the United States Secret Service.

35. The United States seeks this authorization in order to maximize the value of the contents seized from the account considering that the account may be an interest-bearing account, a timed account, an account to which a penalty for early withdrawal applies, or have some other aspect affecting its value.

CONCLUSION

36.     I submit that this affidavit supports probable cause for a warrant to seize the SUBJECT FUNDS within the TARGET ACCOUNTS.


Further your affiant sayeth naught.

_____
SPECIAL AGENT TERRY HEDRICK,
UNITED STATES SECRET SERVICE

Sworn to before me, and subscribed in my presence, this 6th Day of February, 2020.

_____
THE HONORABLE DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE